DAVID RANDALL SMITH
P.O. Box 436
Mt. Hermon, Ca. 95041
(831) 234-8407
Debtor *pro se*

FILED
APR 13 2011
CLERK
United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA- SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>DAVID RANDALL SMITH<br><br>_____<br><br>DAVID RANDALL SMITH, an individual,<br><br>Plaintiff,<br><br>-vs-<br><br>CITIMORTGAGE, INC.; FEDERAL HOME LOAN MORTGAGE CORPORATION; and all persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title thereto; and DOES 1-150, Inclusive;; | Case No. 5:10-bk-52330<br><br>ADVERSARY PROCEEDING<br><br>ADV. NO.: _____<br><br>COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM, TILA VIOLATION, FRAUD, LIBEL, QUIET TILE, AND INJUNCTIVE RELIEF.<br><br>JURY TRIAL DEMANDED |

COMES NOW debtor and plaintiff DAVID RANDALL SMITH herein, ("Plaintiff"), and respectfully alleges the following:

1

1. This adversary proceeding is brought pursuant to 11 U.S.C. §506 and Federal Rule of Bankruptcy Procedure 7001.

2. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§151, 157 and 1334(b). Venue is proper pursuant to 28 U.S.C. §1409.

3. This adversary proceeding is a core proceeding as defined at 28 U.S.C. §157(b) (2) (b) and (b) (2) (K) in that it is an action to determine the nature, extent and validity of a lien on property evidenced by a deed of trust, and the allowance or disallowance of a claim. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and jurisdiction exists pursuant to 11 U.S.C. § 502 (a) and (b) (1), 11 U.S.C. § 544 (a) (3) and (b) (1), 28 U.S.C. 1334, 28 U.S.C. 2201 for declaratory relief and 28 U.S.C. 1367 for pendent state claims.

## PARTIES

4. Plaintiff is an individual, and debtor of the within captioned bankruptcy case, having filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on March 10, 2010 in the Northern District of California Case Number: 10- 52330 and was converted to Chapter 11 by the court on February 14, 2011.

5. Plaintiff is and at all times mentioned herein is the owner and purchaser of real property known as 23 Pine Ave Mount Hermon, CA.

6. The Defendants herein named as "all persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title thereto" (hereinafter referred to as "the unknown defendants") are unknown to Plaintiffs. These unknown Defendants, and each of them, claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Plaintiffs' title; and their claims, and each of them, constitute a cloud on Plaintiff's title to that property.

7. Plaintiffs are ignorant of the true names and capacities of "Defendants" sued herein as "DOES" 1 through 150, and therefore sue these "Defendants" by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities

when ascertained. Plaintiffs are informed and believe and thereon allege that each of these fictitiously named defendants claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to Plaintiffs' title and their claims, and each of them, constitute a cloud on Plaintiffs' title to that property.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

8. CITIMORTGAGE represents itself and holds itself out as the "Secured Creditor", and has asserted a purported secured interest on Plaintiff's residence located at 23 Pine Ave. Mount Hermon, California.

9. FREDDIE MAC HOME MORTGAGE CORPORATION (Hereinafter "FREDDIE MAC") claims to own the Note and Mortgage on their Website look-up tool and lists CITIMORTGAGE as the "seller" of the loan which is loan number 323601448 and not CITIMORTGAGE loan number 20034330826.

10. Plaintiff is informed and believes that FREDDIE MAC lists the loan in Pool A44088, a REMIC pass through trust issued under the provisions of the I.R.S. R.E.M.I.C. Code. A44088 is a Special Purpose Trust formed under the laws of New York State.

11. Plaintiff is informed and believes and therefore alleged that REUNION MORTGAGE, INC. ("hereinafter, "REUNION"") represented to Plaintiff that it was originator of the subject loan.

12. Plaintiff is informed and believes that CITIMORTGAGE claims it is the "investor" on the "REUNION" Note.

13. Plaintiff is informed and believes that the REUNION note was never conveyed into Pool A44088 and that CITIMORTGAGE and FREDDIE MAC defrauded the investors in that trust by not transferring the note into the trust in accordance with the offering circular and IRS regulations for REMIC Trusts.

14. Plaintiff is informed and believes and therefore alleged that "REUNION" by an unknown fashion transferred its <u>servicing</u> interests to CITIMORTGAGE.

15. CITIMORTGAGE caused to be filed a false "Assignment of Deed of Trust" or "Wild Deed Instrument" with the Santa Cruz County Recorder, California, clouding Plaintiff's title and ownership interest for the property known as 23 Pine Ave Mount Hermon, California 95041. *See* **Exhibit A.**

16. CITIMORTGAGE's fraudulent claims are facilitated by using these "Wild Deed Instruments". These instruments are unsecured and as such no security attaches to these "Wild Deed Instruments".

17. On or about January 23, 2006 Plaintiff signed a document styled as a First Promissory Note on the subject property at 23 Pine Ave Mount Hermon, California for $227,000. *See* **Exhibit B.**

18. Plaintiff is informed and believes and therefore alleged that REUNION falsely represented that they were funding the note. This was not the case as the funds came from another unknown source.

19. On or about January 23, 2006 Plaintiff executed another document styled as a "Security Interest" or "Deed of Trust" with respect to the property as Santa Cruz County Recorded Document # 2006-0005777, recorded on January 31, 2006. *See* **Exhibit C.**

20. On January 19, 2010, a "Wild Deed Instrument" was filed by Mortgage Electronic Registration Systems, Inc., ("hereinafter, "MERS") as nominee for REUNION MORTGAGE, INC. which purports to assign its "beneficial interests" to CITIMORTGAGE [CITIMORTGAGE's interest was alleged to have been previously sold on or about March 1, 2006 to "FREDDIE MAC HOME MORTGAGE CORPORATION ("hereinafter, "FREDDIE MAC""), as such neither "REUNION" nor MERS possessed an interest to assign on January 19, 2010].

21. The alleged assignment, moreover, was signed on October 5, 2009 by Yvonne J. Wheeler, Assistant Secretary of MERS who was not a President or Vice President of the corporation..

22. This maneuver was done with the sole purpose to wrongfully foreclose on the Plaintiff's property and was and notarized by Jeffrey Starling three months later on

January 13, 2010. The notary did not witness the signature and the action was not face to face.

23. MERS fraudulently assigned the Deed of Trust to CITIMORTGAGE, having no interest in the promissory note. The Assignment of Deed of Trust cites in its' language: "together with the note". This represents an impossibility known to Defendant(s) in the Assignment. CITIMORTGAGE claims to be servicer of the loan which plaintiff alleges to be FREDDIE MAC Pool A44088, which is a REMIC Trust, governed under the laws of the State of New York. Under IRS Rule 860D(a)(4), The Note and Deed as a "Qualified Mortgage", must have been conveyed to this trust, by lawful assignment and transfer, within 90 days of the closing date of this trust.

24. No assignment of Plaintiff's Mortgage by the cut off date of June 1, 2006 into any FREDDIE MAC Pool exists. Nor did any exist prior to the filing of a 2010 "Wild Deed" done purposely for papering over record mistakes for the California Trustee Sale.

25. On or about June 15, 2010, CITIMORTGAGE filed a Motion for Relief from Automatic Stay [DOCKET 20], under 11 U.S.C. § 362, asserting a claim against Plaintiff, as evidenced by promissory note secured by a first deed of trust recorded on January 31, 2006 in the sum of $220,334.90, and arrears of $38,838.50 in favor of lender and further asserting that said claim is secured by a lien against real property located at 23 Pine Ave, Mount Hermon, California.

26. Attached as exhibit B to the Motion for Relief from Automatic Stay was a copy of a deed of trust in the amount of $227,000 in favor of Lender, REUNION MORTGAGE, INC., which deed of trust was recorded on January 31, 2006, in the Santa Cruz County Recorder's office as Document Number 20060005777. Although there was purported assignment of the REUNION Deed of Trust in January 2010, Plaintiff is informed and believes that such assignment was not done by RUNION but fraudulently conveyed by the "nominee" of record, Mortgage Electronic Registration Systems, Inc. Plaintiff objected to this motion [DOCKET 27], and asserted that these entities had no standing to assert secured interest claim upon Plaintiff's property.

27. The motion was heard on the merits before Honorable Arthur S. Weissbrodt on August 11, 2010, September 29, 2010, November 3, 2010, and March 9, 2011.

28. Although there is no valid assignment of the REUNION Deed of Trust recorded in the Santa Cruz County Recorder's office, Plaintiff is informed and believes that in 2006, REUNION assigned its interest in the REUNION Deed of Trust to an unknown entity, that it no longer has an interest in the REUNION Deed of Trust or the promissory note secured thereby.

29. MERS was never a party to the transaction, or entitled to payment from Plaintiff.

30. Plaintiff is informed and believes that on January 19, 2010, MERS fraudulently assigned the REUNION Deed of Trust to CITIMORTGAGE and, that MERS was never a party to the transaction or entitled to payment and therefore had no interest in the REUNION Deed of Trust or the promissory note secured thereby.

31. CITIMORTGAGE'S fraudulent claim under the REUNION Deed of Trust is entirely unsecured and there is no security that attaches to the REUNION Deed of Trust.

32. In this case, foreclosure has been filed, the entity filing the foreclosure has no pecuniary in the mortgage loan. The foreclosing entity is a third party. The entity lacks standing and the capacity to foreclose. The entity has no first hand knowledge of the loan, no authority to testify or file affidavits as to the validity of the loan documents or the existence of the loan. The entity has no legal authority to draft mortgage assignments relating to the loan. The foreclosing entity and its agents regularly commit perjury in relation to their testimony.

33. REUNION, the "Lender" on the original Promissory Note was not the lender. The originators of the loan immediately and simultaneously securitized the note through the means of conversion of an Article III negotiable Instrument (U.C.C.) into Article IX (U.C.C.), non-negotiable paper. The beneficial interest in the note was never in the lender. In this case, MERS, acting as nominee for REUNION under the assignment of REUNION Deed of Trust, was never intended to be the assignee of the mortgage loan.

CAL WESTERN, CITIMORTGAGE, or some party, has declared default and is not in privity with the lender. The true owner(s) or beneficiary(s) of the mortgage loan has not declared a default, cannot declare a default under it's Trust Agreement, and does not have an interest in the Note that allows for any remedial actions to be under taken by the Beneficial interest Holder(s).

34. The obligations reflected by the note allegedly secured by assignment of REUNION Deed of Trust to CITIMORTGAGE have been satisfied in whole or in part because the investors who furnish the funding for these loans have been paid to the degree that extinguishments of the debts has occurred with the result that there exist no obligations on which to base any foreclosure on the property owned by Plaintiff. Defendants have and continue to cloud the title and illegally collect payments and attempt to foreclose upon the property of the Plaintiff when they do not have lawful rights to foreclose, and are not holders-in-due-course of the notes.

35. The mortgage loan assigned to MERS, as nominee, is, at most, an unsecured debt. The only parties entitled to collect on the unsecured debt would be the holder-in-due-course and beneficial owner(s) of the original Promissory Note (the original "Lender of Record"), *if* the asset is still booked as an asset and has not been sold and de-recognized as an asset under FASB 140. Those unknown parties have not come forward in this case.

36. Certain individuals who were the employees of the Servicers, CITIMORTGAGE, CAL WESTERN RECONVEYANCE, FREDDIE MAC, and even the employees of the law firms, executed and notarized forged documents as the ownership of the loan The affiants have committed counts of fraud, perjury and forgery of the mortgage loan.

37. Defendant CITIMORTGAGE represented itself as creditor and holder of the note coming to Court but are mere administrative entities, alleging now to have standing as "servicer" collecting mortgage payments. The servicer has no greater power than its' Principal, the Trustee, and lacks the authority to bring any action on behalf of the REMIC Trust. The Trust participants have executed Trust Agreements, under oath, with the

Internal Revenue Service (IRS), as mortgage asset "pass-through" entities wherein they can never own or manage the mortgage loan assets in the REMIC Trust. This allows them to qualify as a Tax Free Real Estate Mortgage Investment Conduit ("REMIC") rather than a ordinary Real Estate Investment Trust ("REIT"). As long as the Trust is a qualified REMIC, no income tax will be charged to the beneficial certificate holders.

38. Importantly, the "Trustee" must have the mortgages assigned and recorded in the investors name as the beneficiaries of the Mortgage Backed Security (hereinafter "MBS") in the year the "MBS" "Closed".

39. CITIMORTGAGE lacked the power to acquire or take assignment of any mortgage outside of the 3 month period following the <u>REMIC cut-off date</u> of 6-1-2006.

40. An attempted assignment of the Note to the Loan Trust after this period is a "Prohibited Transaction" which jeopardizes the favorable tax status accorded a REMIC. This transaction would be in contradiction to the Pooling and Servicing Agreement formed under the New York Trust Laws and is VOID.

41. The transfer of mortgage loans into Pool A44088 after the "cut off date" [in this case 6-1-2006], impairs the trust's "REMIC" tax exempt status, and this trust may owe millions of dollars to the "IRS" and the State of California as the income maybe taxed at of one hundred percent (100%) [Assuming any no monetary penalties].

42. Any transfer into a "REMIC" trust after that "REMIC's" "cut off" and "closing dates" is a violation of the FREDDIE MAC offering documents and the strict New York Trust Laws and is void.[1]

43. Every mortgage assignment into the "MBS" should be publicly recorded in the County where the property is located [ Santa Cruz County California as the case at bar]. It is to include an assignment in the name of the "Trust" which plaintiff alleges to be Freddie Mac Pool A44088 under the pooling and servicing agreement dated March 1, 2006."]. Plaintiff's mortgage assignment would have had been publicly recorded in the year 2006.

---

[1] McKinney's Consolidated Law of New York Annotated, Estates Powers and Trusts Laws § 7-2.4 (2002); see Allison & Ver Valen Co. v. McNee, 9 N.Y.S.2d 708 (N.Y. Sur. 1939).

44. An Assignment, dated January 19th, 2010, and as submitted to this Court with a declaration by affiant Eric Rose, Travis Lillie, and Eunice Collins [3 years 6 months after trust closing] is ultra vires. In this scenario, even if the foreclosing entity produces a copy of a note, or even an alleged original, the <u>mortgage loan was not conveyed</u> into the trust under the strict New York Trust Law and the "REMIC" requirements of the "IRS".

45. Consequentially, the end result would be that the required "MBS" asset, or any part thereof (mortgage note or security interest), would not have been legally transferred to the trust to allow the trust to ever be considered a "holder" of a mortgage loan.

46. The Pooling and Servicing Agreement requires that the note be endorsed within 30 days after being placed into the trust. The note filed with CITIMORTGAGE'S claim and moving papers exhibits no evidence of this endorsement and transfer.

47. Such document cannot be enforce by the initial receptor or its purported successors and is void *Ab Initio*.

48. Neither CITIMORTGAGE, nor the Trust and "Trustee" will ever have standing or be a real party in interest before this Court.

49. Plaintiff signed a "Promissory Note" and apparent styled "Deed of Trust" which was defaced with uttering that void such interest and, which unknowingly converting Plaintiff's property into an asset of a "MBS".

50. Plaintiff was never informed of the nature of the multilevel securitization scheme. Plaintiff was deliberately induced into signing a "Negotiable Instrument" which was never intended as such, but as intended as collateral for a "MBS".

51. The fact that this styled loan document was meant to fund a "MBS" was a "Material Disclosure" which was deliberately and intentionally undisclosed in the "Promissory Note" and the "Deed of Trust". Failure to disclose the identity of the true lender at closing was also a "Material Disclosure"; the nature of which would make the <u>contract voidable under California contract law</u>. This transfer would indicate that an "undisclosed yield premium" was not disclosed to Plaintiff in closing Real Estate Settlement Documents and constitutes violation the Truth and Lending Laws.

52. The investors who put up money for the "MBS" and who received the "MBS" Certificates" or Bonds, are not parties to the "PSA" and do not own the pools of "Notes", but are entitle to the cash flows generated. The Investor continues to receive cash flows from any "Note" in default, and they as beneficiary do not notice a default. The purpose of the "PSA" is for the administration, distribution of funds to the investors, conveying the "Mortgage Loan Files" for a complete chain of title, and the obligations of the "Trustee" in administering the "MBS".

53. The Agreements are controlled by, and construed in accordance with, New York law. Each alleged transfer of Plaintiffs' Mortgage Loan from the Seller to the Depositor and from the Depositor to the Trustee was intended to be a sale of that Mortgage Loan and was required to be reflected as such in the Sale and Assignment Agreement, the Trust Agreement, and the county recorder's office, respectively.

54. Here, the "Note" and the "Security Interests" were severed or bifurcated when the "deed of trust" was fraudulently assigned to "MERS" as nominee for "REUNION".

55. "REUNION" never loaned any money to the Plaintiff. "MERS" was never a beneficiary under the "Note". "MERS" purportedly held the Mortgage as "nominee" for "REUNION" and was the putative assignee which conveyed deed of trust to "CITIMORTGAGE" on January 19, 2010.

56. An assignment from "MERS" was a legal nullity. "MERS" never had an interest in this fraudulently conveyed "Deed of Trust" and "Note".

57. The "MERS" assigned mortgage was prepared by an agreement between the Defendants. These Defendants used false information regarding the individuals executing such mortgages and assignments, holding such individuals out to be officers of "MERS".

## FIRST CLAIM FOR RELIEF
**[Declaratory Relief to Determine an Interest in Property]**
**[F.R.B.P 7001(2) and 7001(9)]**

1. Plaintiff re-alleges and incorporate the allegations contained in paragraphs 1 through 57, inclusive, as though set forth at length herein.

2. Plaintiff alleges that he holds an interest in the Property free and clear of any interest of defendants, in that the lien evidenced by the "Deed of Trust" and its subsequent assignments has no value since it is wholly unsecured, and that accordingly, the "Deed of Trust" is null and void.

3. Plaintiff is informed and believes that Defendants allege that the "Deed of Trust" cannot be determined to be null and void because it is secured by the Property which is Plaintiff's principal residence and is not wholly unsecured.

4. Plaintiff is informed and believes and thereon alleges that Defendants dispute the contention alleged herein.

5. An actual controversy exists between Plaintiff and Defendants with regard to the validity, nature and extent of their interests in the Property.

6. It is necessary that this Court declare the actual rights and obligations of the parties and make a determination as to the validity, nature and extent of Defendants' interest in the Property.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. That the Court determine the nature and extent and validity of Defendants' interest in the real property located at 23 Pine Avenue, Mt. Hermon, California.
2. That the Court determine that the amount of the lien secured by the "Deed of Trust" described herein is zero;
3. That the Court determine that the claim owed to "CITIMORTGAGE" by Plaintiffs is wholly unsecured;
4. That the Court determine that the "Deed of Trust" is null and void;
5. For attorney fees and costs of suit incurred herein; and,
6. For such other and further relief as the court deems just and proper.

### SECOND CLAIM FOR RELIEF
[Declaratory Relief to Determine Status of Citimortgage Claim]
[11 U.S.C. § 506 and F.R.B.P 7001]

7. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1 through 57, inclusive, as though set forth at length herein.

COMPLAINT TO DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN AND TO DISALLOW SECURED CLAIM